**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **IVAN ENRICO GOUDEAU** | : | **DOCKET NO. 16-cv-732** |
| **D.O.C. # 223314** | | |
| | | |
| **VERSUS** | : | **JUDGE MINALDI** |
| | | |
| **BURL N. CAIN** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C §
2254 filed by Ivan Enrico Goudeau ("petitioner"). Docs. 1, 6. The petitioner is a prisoner in the
custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated
at the Louisiana State Penitentiary in Angola, Louisiana. Burl N. Cain ("respondent"), former
warden at the Louisiana State Penitentiary, opposes the application. Doc. 21.

This matter is referred to the undersigned for review, report, and recommendation in
accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons
**IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED**
**WITH PREJUDICE**.

**I.**
**BACKGROUND**

*A. Conviction*

On June 4, 2009, the petitioner was indicted by grand jury in the 14th Judicial District,
Calcasieu Parish, Louisiana, with one count of aggravated rape and one count of attempted second
degree murder. Doc. 21, att. 2, p. 41. The charges related to an incident on or about April 16, 2009,

involving a single victim, S.A. ("victim"). *Id.* The petitioner pleaded not guilty and his jury trial

began on October 5, 2010. *Id.* at 16, 26. On October 8, 2010, the petitioner was convicted on both

counts of the indictment. Doc. 21, att. 3, pp. 45, 47. He filed a Motion for a New Trial, which was

heard and denied on October 18, 2010. Doc. 21, att. 8, pp. 102–14. The petitioner was then

sentenced to life imprisonment for the aggravated rape and fifty years' imprisonment for the

aggravated rape, without benefit of probation, parole, or suspension of sentence for either term. *Id.*

at 120–21.

### B.  Direct Appeal

The petitioner filed an appeal through counsel in the Louisiana Third Circuit Court of

Appeal, alleging that the trial court erred in permitting a conviction by nonunanimous verdict. *See*

*State v. Goudeau*, 2011 WL 5189032 (La. Ct. App. 3d Cir. 2011) (unpublished). The Third Circuit

rejected this claim on the merits and affirmed the petitioner's conviction and sentence. *Id.* The

petitioner then sought review in the Louisiana Supreme Court, which denied same on April 9,

2012. *State v. Goudeau*, 85 So.3d 692 (La. 2012). He did not seek review in the United States

Supreme Court. Doc. 6, p. 3.

### C.  Post-Conviction Relief

The petitioner then filed a pro se application for post-conviction relief, a request for

appointment of counsel, and a request for an evidentiary hearing in the trial court on February 11,

2013.[1] Doc. 21, att. 9, pp. 92–100. There he raised the following claims:

1.  The trial court erred in failing to sequester the jury.
2.  The petitioner was denied his constitutional right to confront the witnesses against him.
3.  The petitioner was erroneously denied his right to DNA testing.

---

[1] The pleading does not contain the date that it was submitted to prison authorities for mailing, which would ordinarily count as the date of filing under the prison mailbox rule. *See Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009). Accordingly, we count the date that the pleading was received by the trial court as the effective date of filing.

4.  The petitioner received ineffective assistance from his appellate counsel.

5.  The petitioner received ineffective assistance from his trial counsel.

*Id.* at 110–44.

The trial court granted the requests for an evidentiary hearing and appointment of counsel. *Id.* at 159–60.  At hearings held February 3 and February 10, 2014, the court heard testimony and argument on both the ineffective assistance of counsel claims,. *See* doc. 21, att. 11, pp. 11–55 (first day); *id.* at 57–167 (second day).

On the first day of the hearing, following testimony from Goudeau's appellate counsel, the court denied the ineffective assistance claim relating to that attorney. *Id.* at 47–48. On the second day of the hearing the petitioner dismissed his attorney and elected to represent himself. *Id.* at 61–67. He dismissed his claim relating to jury sequestration. *Id.* at 144.  The state also noted that the petitioner had not argued his confrontation clause claim, except within his ineffective assistance claim and through attempts to present it as a *Brady* violation. *Id.* at 143–45. After lengthy discussion of the claim, the trial court appeared to accept that the confrontation clause claim was actually an allegation of trial counsel error and thus belonged to the ineffective assistance of trial counsel claim. *Id.* at 150–52. The trial court subsequently issued a written ruling, addressing the issues raised in the petitioner's ineffective assistance of trial counsel claim and then denying his application for post-conviction relief. Doc. 21, att. 9, pp. 211–13.

The petitioner sought review in the Third Circuit which denied same on May 29, 2014, due to the petitioner's failure to attach transcripts of the February 2014 evidentiary hearings. *Id.* at 237. The court also noted that the petitioner was entitled to free copies of these transcripts and could refile his writ application once he had obtained the copies. *Id.* The petitioner apparently filed another writ application with the Third Circuit, alleging that he had filed a motion for production

of transcripts with the trial court. *See id.* at 236. On July 16, 2014, the Third Circuit again denied the application for failure to attach the transcripts themselves or a copy of that motion. *Id.*

The record shows that the petitioner filed a Motion for Evidentiary Hearing and Transcript with the trial court on June 25, 2014. *Id.* at 229–35. At some unspecified date, in apparent reference to the request for an evidentiary hearing, the trial court determined that this motion was moot. *Id.* at 229. The petitioner then filed another motion with the trial court, again seeking production of the evidentiary hearing transcript, on September 3, 2014. *Id.* at 240–44. The trial court granted this motion on September 11, 2014. *Id.* at 244.

The petitioner then filed a second writ application in the Third Circuit on February 23, 2015. *See* doc. 21, att. 10, p. 25. The Third Circuit ruled on May 7, 2015, granting the writ in part and denying it in part. *Id.* It found no error in the trial court's ruling on the ineffective assistance of trial and appellate counsel claims and denied review of his new claim that he received ineffective assistance from post-conviction counsel due to petitioner's failure to raise that claim in the trial court. *Id.* The Third Circuit then noted that the trial court had not ruled on the two remaining claims in the application for post-conviction relief. *Id.* Accordingly, it remanded the matter to the trial court for consideration of and ruling on the petitioner's claims that he was denied his request for DNA testing and that the trial court erred in failing to sequester the jury (in spite of the petitioner's announcement that he was dismissing that claim at the evidentiary hearing). The Third Circuit likewise denied the petitioner's request to poll the panel and appoint counsel for appellate proceedings as outside of its scope of review. *Id.*

In response to the Third Circuit's remand order, the trial court issued an order and written reasons on May 19, 2015, finding no merit to the sequestration claim and determining that the petitioner had not met his burden under the Louisiana Code of Criminal Procedure for showing

that he was entitled to DNA testing. *Id.* at 26. The petitioner again sought review in the Third Circuit, which denied same on September 22, 2015. *Id.* at 37. He then sought review in the Louisiana Supreme Court, which denied the writ on May 20, 2016. *Id.* at 236–37.

### D.  *Federal Habeas Petition*

The instant application was filed in this court on May 25, 2016.[2] Doc. 1. Here the petitioner appears to renew all claims from his state application for post-conviction relief, as he provides a copy of the memorandum he filed with the trial court in lieu of any original briefing for this application. *See* doc. 1, att. 2.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

### A.  *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The

---

[2] Under the prison mailbox rule, the date of filing of a § 2254 petition would ordinarily be counted from the date an inmate delivered his pleading to prison authorities for mailing. *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Here, however, the petitioner does not indicate when this handover took place. Accordingly, we treat the date that the petition was received by this court as the date of filing.

limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1.  Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of

the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides

an independent and adequate ground for the dismissal ("traditional" procedural default)[3] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility

---

[3] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. *Timeliness*

Here the petitioner's conviction became final on July 10, 2012, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Thus **216 days** accrued

before the petitioner filed his application for post-conviction relief in the trial court on February 11, 2013.

Under § 2244(d), only "properly filed" applications for post-conviction relief or other state collateral review can toll the one year limitation. "An application is '**properly** filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 121 S.Ct. 361, 364 (2000) (emphasis in original). If the applicable procedural rule serves as an "absolute bar to filing, such that it provides no exceptions and the court need not examine issues related to substance to apply the rule, then the application is not properly filed." *Larry v. Dretke*, 361 F.3d 890, 893 (5th Cir. 2004) (internal quotations omitted); *see Emerson v. Johnson*, 243 F.3d 931, 933–34 (5th Cir. 2001) (noting that the rule at issue there "seemingly provides no exceptions and does not require an examination of the merits of the [petitioner's] claim").

Here the Third Circuit rejected the petitioner's first writ application for failure to attach copies of the transcripts from his evidentiary hearings. Doc. 21, att. 9, p. 237. However, the court cited no procedural rule. Without citation to the appropriate rule, it is impossible for us to determine whether there are any exceptions to this requirement or whether it serves as a bar to review in all cases. Additionally, as the respondent notes, it is unclear to what extent the trial court might have erroneously delayed in providing copies of the transcripts. Therefore, even if the writ application to the Third Circuit were not properly filed, the petitioner might be entitled to equitable tolling for some or all of that time. Accordingly, we decline to count any of the time between the unsuccessful and successful writ applications to the Third Circuit against the petitioner.

The limitations period was thus untolled with the Louisiana Supreme Court's ruling on May 20, 2016. An additional **5 days** accrued before the instant petition was filed with this court

on May 25, 2016. Therefore only **221 days** have accrued against § 2244(d)'s one year limit and the instant petition is timely.

### B. Exhaustion and Procedural Default

As the respondent points out, all claims were raised in the petitioner's application for post-conviction relief and none was subjected to procedural default.[4] Therefore these doctrines present no bar to review.

### C. Substantive Review

Having determined that all claims are properly before this court, we now consider them under the standards described above.

#### 1. Sequestration of jurors

The petitioner first alleges that the trial court abused its discretion in failing to sequester the jury.

In Louisiana, the decision to sequester jurors in a non-capital criminal case is left to the discretion of the trial court. LA. C. CR. P. art. 791(C). Sequestration is intended to protect jurors from outside influences and to prevent them from basing their verdicts on anything other than the evidence presented at trial. *State v. Williams*, 445 So.2d 1171, 1176 (La. 1984).

The petitioner appeared to be under the mistaken belief that his was a capital case. *See* doc. 1, att. 2, p. 9. He does not allege any specific way in which the trial court's failure to sequester exposed the jury to outside influences or otherwise interfered with the petitioner's right to a fair trial. Accordingly, he fails to show that the trial court abused its discretion or otherwise

---

[4] The trial court construed the petitioner's claim relating to confrontation of witnesses as part of his ineffective assistance of trial counsel claim and did not rule on it as it wasoriginally presented and is here renewed. Accordingly, as respondent notes, the state court decisions relating to that claim are not entitled to any deference on our review. *Carty v. Thaler*, 583 F.3d 244, 253–54 (5th Cir. 2009).

demonstrate a right to federal habeas relief under this claim. *See, e.g.*, *Lathers v. Cain*, 2011 WL 1793274 (M.D. La. Apr. 7, 2011) (unpublished).

### 2. *Confrontation of witnesses*

The petitioner alleges that he was denied his Sixth Amendment right to confront witnesses against him when the Sexual Assault Nurse Examiner ("SANE"), Tammy Vincent, testified for the state as to the victim's blood alcohol levels and the emergency room physician's findings of shoe sole marks on the victim's back.[5]

The United States Supreme Court holds that, under the Confrontation Clause of the Sixth Amendment, out of court testimonial statements by a witness may not be introduced against a criminal defendant unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*, 124 S.Ct. 1354, 1365–69 (2004). Certificates detailing the results of forensic analyses are considered testimonial statements for the purpose of Confrontation Clause analysis. *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2532 (2009).

Confrontation Clause errors are subject to harmless error analysis. *Fratta v. Quarterman*, 536 F.3d 485, 507–08 (5th Cir. 2008). Accordingly, a Confrontation Clause violation will only confer a right to federal habeas relief if it is shown to have a "substantial and injurious effect or influence" on the verdict. *Id.* (citation omitted). In conducting this analysis the court looks to the following factors: (1) the importance of the testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the existence of corroborating or contradicting evidence to the

---

[5] The petitioner also raises challenges under this claim to other areas of Vincent's testimony, based on her personal knowledge and examination, and to the testimony of state's witness Rhalie Austin, a forensic analyst. *See* doc. 1, att. 2, pp. 14–15. However, he does not show how any other area of testimony violated the Confrontation Clause, as both Austin and Vincent testified at trial and the defense had the opportunity to cross-examine them but declined to do so. Doc. 21, att. 7, pp. 169, 190.

testimony; and (4) the overall strength of the prosecution's case. *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994). The final factor is "probably the single most important . . . ." *Id.*

At trial Vincent testified, based on her review of medical records, that the victim had a blood alcohol level of .104 when she was seen at the emergency room after the attack. Doc. 21, att. 7, pp. 165–66. Another state's witness, Margaret Steele, testified as an expert in blood alcohol analysis. *Id.* at 194–97. She was employed at the Southwest Louisiana Crime Laboratory and had tested the victim's blood, finding a blood alcohol level of .09.[6] *Id.* at 194, 201.

During her testimony Vincent also read the portion of the medical records describing the emergency room physician's findings from his examination of the victim. Doc. 21, att. 7, pp. 166–69. This physician, Dr. Hedlesky, had noted bruising and abrasions on the victim's shoulders and upper back, in the pattern of shoe soles. *Id.* at 168. Prior to reading these notes, Vincent also identified a "patterned mark" from her own photographs of abrasions and bruising on the victim's back. *Id.* at 154, 158.

The respondent concedes that the Confrontation Clause was violated in both instance, as Vincent was merely reading testimonial information provided by another person who was not present at trial, and whom it does not appear the petitioner had any prior opportunity to confront. However, the respondent maintains that the petitioner cannot show any harm from these errors.

The respondent first notes that both pieces of evidence were corroborated by properly admitted evidence – the blood alcohol finding by Steele's testimony that she had also conducted tests and found similar blood alcohol levels and the shoe print bruising by Vincent's own photographs and descriptions of the injury. Furthermore, the respondent contends, the evidence of the victim's intoxication was not particularly relevant or helpful to the state's case against the

---

[6] Steele also noted that she had sent samples to a a private laboratory, AIT, which determined that the victim had a urine alcohol level of .124. Doc. 21, att. 7, p. 204.

petitioner for aggravated rape and attempted murder. We agree, as the petitioner does not explain how the victim's intoxication relates to the elements of either offense.

Finally, as the respondent points out, the state presented a strong case against the petitioner outside of the Confrontation Clause violations. The victim testified at trial and identified the petitioner as someone previously known to her as a family friend. Doc. 21, att. 6, pp. 172–73. She described how, the evening before the attack, she had accepted a ride from the petitioner to her mother's house. *Id.* at 173–75. However, at some point on the journey the petitioner claimed his car was overheating and pulled off of the road. *Id.* at 175–76. The two began walking, with the petitioner claiming he had called someonefor assistance. *Id.* at 176–77. However, when the victim expressed a desire to call her mother, the petitioner cursed at her, dragged her into the woods, and cut her with a box cutter. *Id.* at 177. He forced her to take her clothes off, then raped her anally and orally. *Id.* The victim testified that throughout the attack, she tried to fight the petitioner and that he responded by kicking her and cursing at her. *Id.* at 177–78.

The victim testified that she began to weaken after these attacks, and that the petitioner commanded her to get up and clean him off. *Id.* at 178. He then told the victim that he was going to kill her, raped her anally once more, and cut her with the box cutter, during which time she was unable to fight back and felt herself losing blood. *Id.* at 178–79. The victim testified that some time after the final attack, when it appeared the petitioner had left, she got up and began to search for a nearby house. *Id.* at 179. She eventually located someone who called for assistance, and sheidentified the petitioner as her attacker to both the occupants of the home and the first responders. *Id.* at 179–80.

The victim's testimony was corroborated by the physical evidence. Her sexual assault examination showed multiple injuries all over her body, including to her rectum, and consistent

with anal rape and physical abuse. Doc. 21, att. 7, pp. 153–59. The victim's DNA was found under the petitioner's fingernails and her blood was identified on his clothing. *Id.* at 188. Additionally, although the petitioner asserted that the victim had instead been stabbed on a bridge by two assailants in a Jeep, the police were unable to find any evidence corroborating his story. *Id.* at 57–62.

Based on the above, it is clear that the Confrontation Clause violations were no more than harmless error. The information conveyed by the violations was of limited or no materiality to the offenses and was independently corroborated by, and to a large extent cumulative to, properly admitted evidence. Furthermore, the prosecution presented substantial evidence in support of the verdict. Accordingly, the Confrontation Clause violations do not confer a right to federal habeas relief.

### 3.  DNA Testing

The petitioner next seeks federal review of the trial court's denial of his request to have certain items of evidence DNA-tested pursuant to Article 926.1 of the Louisiana Code of Criminal Procedure.

As the respondent notes, a state court's determination of the correctness of Article 926.1 is outside of the scope of federal habeas review. *E.g.*, *Robinson v. Warden, Louisiana State Penitentiary*, 2016 WL 3200194, *14 (W.D. La. Apr. 29, 2016) (unpublished) (citations omitted). Additionally, the United States Supreme Court holds that there is no freestanding constitutional right of access to state's evidence for post-conviction DNA testing within a petitioner's right to substantive due process. *District Attorney's Office for Third Judicial District v. Osborne*, 129 S.Ct. 2308, 2322 (2009). Moreover, a procedural due process violation can only be shown if the petitioner demonstrates facial inadequacies in the state's procedures for post-conviction DNA

access. *See Richards v. District Attorney's Office*, 355 Fed. App'x 826, 826–27 (5th Cir. 2009) (unpublished).

Here the petitioner appears to complain about the testing that was performed and to allege that certain articles of clothing (a pair of boxers and a pair of pants) taken into evidence were not subjected to DNA testing.[7] However, he fails to allege any facial inadequacies within Article 926.1 of the Louisiana Code of Criminal Procedure and instead bases his challenge in the Louisiana courts' application of same. Accordingly, he has not shown a right to federal habeas relief under this claim.

### 4.  *Ineffective Assistance – Trial Counsel*

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984).  Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064.

The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

---

[7] As the trial court noted, however, and the petitioner fails to contradict, "[b]oth . . . items were tested, and the report showed none of the results were testable." Doc. 21, att. 10, p. 26.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)).

"Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1735, 191 L. Ed. 2d 706 (2015). However, we will also examine whether the cumulative effect of any prejudice found could satisfy *Strickland*. *E.g.*, *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009).

### a.  *Failure to file pretrial motions and conduct discovery*

The petitioner alleges that his trial attorney failed to file any pretrial motions,[8] including challenges to the admission of the state's evidence, or to conduct discovery.

As respondent notes, an attorney's decision regarding the filing of pre-trial motions "falls squarely within the ambit of trial strategy." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). Whether counsel's failure to file a motion is ineffective assistance depends on whether the trial court would have granted the mtion. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). Furthermore, counsel has no duty to file pre-trial discovery motions when the prosecution

---

[8] As respondent points out and the trial court noted, this is false. Richard White, the petitioner's first attorney, filed a motion for discovery and inspection, which was granted on July 24, 2009. Doc. 21, att. 2, pp. 58–60; *see* doc. 21, att. 9, pp. 211–12.

has established an open file policy and its obligation to disclose exculpatory information would render such requests pointless. *Smith v. Maggio*, 696 F.2d 365, 367 (5th Cir. 1983).

The only specific motion that petitioner alleges his attorney should have filed is a challenge to the admissibility of the state's evidence under a provision of the Louisiana Code of Criminal Procedure. *See* doc. 1, att. 2, p. 29. That provision requires a party intending to introduce a certificate of analysis from a criminalistics laboratory to provide written notice of intent forty-five days prior to commencement of trial. LA. REV. STAT. § 15:501(A). It also permits the defendant's attorney to demand that the person who made the analysis or examination testify at trial. *Id.* at § 15:501(B).

The petitioner alleges that filing a motion pursuant to Section 15:501(B) could have prevented the state from introducing inadmissible hearsay by having the findings of Dr. Hedlesky's examination read into the record without Dr. Hedlesky testifying. Doc. 1, att. 2, pp. 30–31. However, Section 15:501 only relates to certificates of analysis covered by Section 15:499 and it is unclear whether Hedlesky's examination would qualify under that statute. Assuming *arguendo* that it would, we note that the petitioner's subsequent[9] trial attorney, Charles St. Dizier, was questioned at the February 2014 evidentiary hearing on his pretrial motions and discovery. There St. Dizier stated that he had received discovery in the case. Doc. 21, att. 11, p. 129. He also acknowledged that he had allowed Vincent to read reports into the record rather than subpoenaing Dr. Hedlesky, based on his belief that a physician might be a more persuasive witness for the state.[10] *Id.* at 128–29. As the trial court noted, this appeared to be sound trial strategy and the state

---

[9] According to the evidentiary hearing transcript, at least two defense attorneys were appointed to represent the petitioner between Richard White, his first trial attorney, and St. Dizier. Doc. 21, att. 11, pp. 72–73.
[10] Although the physician's examination would not appear to qualify as a certificate covered by the relevant statute, it was the only area explored in the petitioner's examination of St. Dizier during the evidentiary hearing.

woud have stil been able to introduce that evidence through Hedlesky's testimont had St. Dizier objected. Doc. 21, att. 9, p. 212.

Petitioner fails to contradict this point, either by showing why this was not a sound strategic choice or by showing adequate prejudice flowing from the failure to subpoena Hedlesky. He also fails to demonstrate any motions, other than the one described above, that St. Dizier should have filed, much less how these motions might have succeeded on the merits.

### b.  Failure to investigate/withholding of exculpatory information

The petitioner next asserts that St. Dizier did not investigate what the petitioner terms alternately as alibi material and exculpatory/impeachment evidence. Namely, he takes issue with trial counsel's alleged failure to 1) use DNA test results from articles of clothing at trial, 2) question witnesses on their testimony, and 3) investigate pictures of the petitioner's penis, allegedly showing sores which the petitioner claims would have renderd him incapable of raping the victim. The petitioner also alleges that St. Dizier performed deficiently by failing to introduce the photographs as evidence.

It is well settled that a strategic choice by trial counsel "after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable . . . ." *Strickland*, 104 S.Ct. at 2066. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations **or to make a reasonable decision that makes particular investigations unnecessary**." *Id.* (emphasis added).

Under the first and second allegations the petitioner fails to provide any support, beyond his own conclusory and self-serving claims, for how these tactics might have weakened the state's case against him. As the trial court noted, the only specifics he alleges in any detail under the first

-19-

two claims relate to the failure to challenge state's witness Rhalie Austin on the unreliability of fecal DNA or to conduct independent testing of same. Doc. 21, att. 9, pp. 212–13. The petitioner presents nothing to refute the trial court's findings that trial counsel conducted a reasonable investigation into this area and reasonably determined that the topic was not a sound basis for challenging the state's case.

As for the pictures, these claims relate to photographs of the petitioner's genitalia. St. Dizier did not have clear recollection of these images, which are not in the record before this court, but stated that he did not view them as strong evidence against the petitioner's ability to commit a rape and thus declined to investigate them further or have them introduced at trial. Doc. 21, att. 11, pp. 131–32. The petitioner fails to refute this contention by providing any support for the photographs' evidentiary weight.[11]

### c.   *Failure to make timely objections and file other motions*

Finally, the petitioner contends that St. Dizier rendered ineffective assistance by failing to preserve several claims for review. Under this claim the petitioner notes several instances where St. Dizier or other, unspecified trial counsel did not object to trial court actions. Doc. 1, att. 2, pp. 36–37. However, as respondent notes, most of these claims were raised in the petitioner's application for post-conviction relief. Therefore we only review this claim with respect to the petitioner's assertion that trial counsel did not object to 1) the state's argument against conducting

---

[11] The petitioner only points to statements from St. Dizier at sentencing, referencing the photographs and offered in support of the defense's motion for a new trial. Doc. 1, att. 2, pp. 33–34. There St. Dizier admitted that he only became aware of the photographs during trial and that, "for several different reasons," he had not sought to introduce them then. Doc. 21, att. 8, pp. 106–07. However, he contended that the photographs supported the motion for a new trial because they showed that "there is evidence out there that is favorable to [the defense's] case." *Id.* at 107–08.

Like the petitioner's allegations in the instant petition, these vague and self-serving statements are not persuasive as to whether failure to investigate the photographs amounted to ineffective assistance, especially in light of the strength of the state's case outlined *supra* under Claim 1 and the fact that the photographs have not been produced.

a preliminary examination and 2) the petitioner's absence from a status conference where his difficulty retaining counsel was discussed.[12]

As the trial court noted, the issue at the status conference was already resolved by the time the conference was conducted. Doc. 21, att. 9, p. 213. Thus the petitioner cannot show any prejudice flowing from his absence. Likewise, the petitioner fails to allege any prejudice resulting from the waiver of a preliminary examination.

### d.   Cumulative effect

Petitioner has not shown any prejudice. Accordingly, the cumulative effect of any deficient performance shown is still insufficient to satisfy *Strickland*. Thus the petitioner cannot show that the state court's denial of his ineffective assistance of trial counsel claim was contrary to or based on an unreasonable application of federal law.

### 5.   Ineffective Assistance – Appellate Counsel

Here petitioner complains of appellate counsel's failure to file an *Anders* brief[13] and alleges a resulting lack of error patent review by the Third Circuit. Petitioner's appellate counsel, Kerrie Ellis, appeared at the February 2014 evidentiary hearing and was examined by the petitioner's post-conviction counsel.

At this hearing Ellis noted that he had received correspondence from the petitioner, who wanted him to raise an ineffective assistance of counsel claim in the appeal. Doc. 21, att. 11, p. 30. However, Ellis declined to do so because he believed it was better suited to post-conviction relief. *Id.* at 38–39. He also stated that he decided not to file an *Anders* brief and instead to appeal a single

---

[12] The trial court viewed the ony novel issue as the waiver of the petitioner's presence at the status conference. Doc. 21, att. 9, p. 213. However, we cannot locate where the preliminary examination was otherwise addressed in the state court decision and will therefore review it under this claim.

[13] In *Anders v. California*, 87 S.Ct. 1396 (1967), the Supreme Court established defense counsel's duty when he finds no arguable issue to present on appeal. As the Fifth Circuit has stated, this includes "[isolating] possibly important issues and . . . [furnishing] the court with references to the record and legal authorities to aid in its appellate function." *United States v. Johnson*, 527 F.2d 1328, 1329 (5th Cir. 1976).

claim relating to the non-unanimous verdict, because *Anders* briefs received less scrutiny on review. *Id.* at 43. Finally, he asserted that all appeals were subject to error patent review. *Id.*

The petitioner fails to contradict any of the above points. Accordingly, he cannot satisfy either prong of *Strickland* and fails to show that the state court's denial of this claim was contrary to or based on an unreasonable application of federal law. He is therefore not entitled to federal habeas relief under this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth

arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 18th day of January, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE